**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EDDIE PRESTON LEWIS, | : | CIVIL CASE NO. |
|    Plaintiff, | : | 3:08-CV-728 (JCH) |
| | : | |
| v. | : | |
| | : | |
| JOHN SIEMINSKI, ET AL., | : | SEPTEMBER 22, 2010 |
|    Defendants, | : | |

**RULING RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT (Docs. Nos. 22, 27)
AND MOTION FOR ADDITIONAL DISCOVERY (Doc. No. 28)**

**I.    INTRODUCTION**

Plaintiff Eddie Preston Lewis ("Lewis") is an inmate currently confined at the Enfield Correctional Institution in Enfield, Connecticut. He filed this civil rights action pro se and in forma pauperis alleging inter alia that the defendants failed to protect him from assault by an individual who was not authorized to visit him at MacDougall-Walker Correctional Institution ("MacDougall") in December 2005. Pending before the court is a Motion for Extension of Time to obtain additional discovery filed by Lewis, a Motion for Summary Judgment filed by Lewis, and a Motion for Summary Judgment filed by the defendants.[1] For the reasons that follow, the motions filed by Lewis are denied and the motion filed by the defendants is granted in part and denied in part.

---

[1] Plaintiff lists the following defendants in the caption of his Complaint: Warden John Sieminski, Deputy Warden Christine Polce, Lieutenant Abraham Velez, Correctional Officer Matthew Stolfi, Captain Michael Beaudry, Commissioner of Corrections Theresa Lantz, Visiting Clerk Sandra Babcock, John/Jane Doe Medical Nurse, Captain John Patz, and Captain Keith Hightower. The Complaint was served on these defendants only. On page nineteen of the Complaint, however, plaintiff includes a summary of his claims and includes claims against Deputy Warden Curt Boyle and Correctional Officer Bienvenido Morales. With regard to Deputy Warden Boyle, Lewis asserts that he failed to respond to his letter about the incident involving the visitor that assaulted him. He alleges that Correctional Officer Morales was responsible for admitting the unauthorized visitor to MacDougall.
    Because these individuals were not listed by plaintiff as defendants in the title of the Complaint (Morales is described as a "defendant" at paragraph 17 of the Complaint), they are not defendants in this action. See Fed. R. Civ. P. 10(a). Nor has either individual been served with the Complaint. Because the plaintiff proceeds pro se in this action, however, the court will consider the claims against these defendants in ruling on the Motions for Summary Judgment.

After he filed his own Motion for Summary Judgment and defendants filed their Motion for Summary Judgment, Lewis filed a Motion seeking additional time to obtain newly discovered evidence that he claims became known to him during the discovery process.  See Mot. to Req. Additional Disc. (Doc. No. 28).  Lewis does not identify the alleged documents that are in the possession of the defendants or explain how they are pertinent to the issues in the complaint or the arguments raised by defendants in their motion for summary judgment.  See Fed. R. Civ. P. 56(f)(2) (permitting the court to order a continuance for additional discovery, if "essential to justify [a party's] opposition").  Accordingly, Lewis has not shown good cause to grant him an extension of time to conduct further discovery.  Further, Lewis has not demonstrated that he has been unable to respond to the Motion for Summary Judgment filed by the defendants as he has since filed a memorandum and affidavit in opposition to that Motion.  The Motion for Extension of Time to conduct additional discovery is denied for lack of good cause shown.

## II.     STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case.  See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

A court must grant summary judgment if the pleadings, discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact.  See

Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert "the existence of some unspecified disputed material facts" or present "mere speculation or conjecture."  W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted).  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and "draw[s] all permissible factual inferences in favor of the" nonmoving party.  Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Where a party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

3

**III. FACTS**[2]

On or about January 1, 2005, prison officials at MacDougall placed an individual named Margaret Moore ("Moore") on Lewis's visitation list. Moore visited Lewis at MacDougall for eight months before he made a request to have Moore removed from his visiting list. On or about September 17, 2005, in response to Lewis's verbal request, Captain Patz removed Moore from Lewis's visiting list.

On December 7, 2005, an officer called Lewis to a visiting room for a professional visit with an attorney named Michele Murphy, who represented him in a pending legal case. When Lewis arrived at the interview room, Attorney Murphy and Moore were present. Moore, who was listed as inactive on Lewis's visiting list, had gained access to the interview room as Attorney Murphy's assistant. Moore, however, did not work for Attorney Murphy, but had paid some of the legal fees necessary to retain Attorney Murphy as counsel for Lewis in his pending legal case. Correctional Officer Morales should not have granted Moore access to MacDougall to visit with Lewis.

Correctional Officer Stolfi was posted in the visiting room area as the phone monitor at the time of the visit between Attorney Murphy, Lewis, and Moore. During the visit, Officer Stolfi observed a level of familiarity between Lewis and Moore that led him to question whether Moore was Attorney Murphy's assistant. Officer Stolfi investigated Lewis's visitation list and found that Moore was listed as inactive and should not have been granted access to MacDougall. Officer Stolfi also checked Lewis's visiting

---

[2] The facts are taken from defendants' Local Rule 56(a)(1) Statement along with the attached exhibits and affidavits (Docs. Nos. 27-2 to 27-5) and Lewis's Affidavit (Doc. No. 31).

4

applications and found that Moore was listed as Lewis's spouse. Officer Stolfi relayed this information to Captain Hightower. Captain Hightower instructed visiting room staff to ask Moore to leave the interview room.

Captain Hightower and Officer Stolfi then questioned Attorney Murphy about Moore. Attorney Murphy stated that Moore was the fiancé of Lewis and that she worked for her law firm as an assistant. Captain Hightower then spoke to Moore, who stated that she was Lewis's fiancé, but that she did not work for Attorney Murphy. Moore also informed Captain Hightower that she had retained Attorney Murphy to represent Lewis and that she had not asked Attorney Murphy to lie for her. Captain Hightower then asked Moore to leave the prison facility.

Captain Hightower contacted Major Lahda regarding the incident. Major Lahda instructed Captain Hightower to end the legal visit between Lewis and Attorney Murphy, direct Attorney Murphy to leave the prison facility, and place Lewis in restrictive housing pending an investigation.

Lieutenant Velez instructed several officers to place Lewis in handcuffs and escort him to the restrictive housing unit. Once at the unit, an officer strip-searched Lewis. After the strip-search, the officer provided Lewis with a clean jumpsuit, escorted him to a cell, removed the handcuffs and gave him clean bed linens. Later that evening, medical and mental health staff examined Lewis.

During the evening of December 7, 2005, Lieutenant Velez, Captain Hightower, and Correctional Officers Stolfi, Morales, and Beaudry prepared Incident Reports. On December 12, 2005, Major Polce reviewed the Incident Reports and noted that Attorney Murphy's visiting privileges had been suspended, the Central Office Legal Liaison had

5

been advised of the Attorney Murphy's conduct, and that she was awaiting further direction. On December 19, 2005, Warden Sieminski noted that correctional staff had taken proper action and that both the attorney and civilian had been removed from Lewis's visiting list.

**IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 22)**

Lewis argues that there are no issues of material fact in dispute and he is entitled to summary judgment as a matter of law. The Local Rules require that a motion for summary judgment be accompanied by "a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1). Each statement in the Rule 56(a)(1) Statement should include "a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served" with the Local Rule 56(a)(1) Statement. D. Conn. L. Civ. R. 56(a)(3). This specific citation requirement applies to <u>pro se</u> litigants as well as to attorneys. Local Rule 56(a)(4) also requires that the movant file a memorandum in support of his motion.

The Motion for Summary Judgment filed by Lewis contains statements as to a fact admitted by each defendant in his or her response to requests for admission. Lewis concludes, without discussion, that there are no material facts in dispute and he is entitled to judgment as a matter of law because the defendants all admitted that a

6

security breach had occurred on the day that he was allegedly assaulted by Moore.

Lewis has not filed a separate Local Rule 56(a)(1) Statement or attached copies of the answers to the requests for admission to his Motion. Nor has he filed a memorandum in support of his Motion for Summary Judgment. Thus, his Motion for Summary Judgment fails to comply with court rules. Additionally, the fact that a security breach may have occurred on the day Lewis was assaulted does not entitle Lewis to judgment as a matter of law as to his Eighth Amendment claim of failure to provide him with safe conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 834, 847 (1994) (holding that to state claim of deliberate indifference to inmate safety, inmate must show he is confined "under conditions posing a substantial risk of serious harm" and that prison official acted with culpable intent, i.e., that he or she had knowledge that the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate [the harm]"). Accordingly, Lewis's Motion for Summary Judgment is denied.

**V.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 27)**

Defendants raise three arguments in support of their Motion for Summary Judgment: (1) Lewis fails to satisfy the objective and subjective prongs of the Eighth Amendment failure to protect standard; (2) Lewis does not allege the deprivation of a constitutionally protected liberty or property interest in order to assert a viable Due Process claim; and (3) Lewis fails to allege a cognizable retaliation claim. Lewis has filed a memorandum and affidavit in response to the Motion for Summary Judgment.

7

A.  Eighth Amendment Failure to Protect Claim

Lewis alleges that, during his visit with Moore on December 5, 2007, she assaulted him in the face, and he suffered a bruised eye. He argues that Correctional Officer Morales and defendants Sieminski, Velez, Stolfi, Beaudry, Lantz, and Hightower should not have permitted Moore to enter MacDougall that day because she was not on his visiting list. Lewis contends that the defendants are liable for failing to protect him from harm by Moore. Defendants argue Lewis fails to state a claim for failure to protect him from assault by Moore.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to make reasonable efforts to ensure inmate safety. See id. at 832. To state a viable Eighth Amendment claim, "the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996). To establish a constitutional violation, a prisoner must show that the conditions of his incarceration posed a substantial risk of serious harm and that the prison official was deliberately indifferent to his safety. See Farmer, 511 U.S. at 834. A prison official demonstrates deliberate indifference where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Lewis contends that the defendants created a condition posing a substantial risk of serious harm when they permitted Moore to enter the visitation room after she had

been removed from his visiting list. Defendants argue that Lewis has not demonstrated that they subjected him to a potentially harmful prison condition because he has failed to submit any evidence that Moore assaulted or injured him during the visit.

Defendants submit affidavits from Attorney Murphy and Correctional Officer Stolfi, who both aver that they did not observe Moore assault Lewis at any time during the visit on December 7, 2005. Lieutenant Velez took a photograph of Lewis after he was removed from the visitation room. It is unclear from the black and white copy of the photograph as to whether Lewis may have suffered a bruise around his right eye. A medical incident report prepared by a nurse after examining Lewis later that evening makes no mention of complaints by Lewis regarding any injuries suffered during the visit with Moore. None of the statements issued by those officers and officials involved in the incident refer to an assault on Lewis or any injuries suffered by him.

Lewis has submitted his own affidavit in which he avers that Moore hit him several times in the face and suffered a bruised eye. Lewis did not submit any medical records showing that he either complained about or received treatment for the injury he allegedly suffered due to the assault. It is apparent that there is a disputed issue of material fact as to whether Lewis was assaulted by Moore and received an injury to his face.

Even if the court assumes that the defendants created a condition posing a substantial risk of harm to Lewis by permitting Moore to enter the visitation room and assault him, Lewis has not produced evidence raising a triable issue of fact that any of the defendants acted with deliberate indifference to this serious harm. There is no evidence now before the court that any of the defendants were aware that Moore posed

9

a danger to Lewis prior to the visit in December 2005.

Lewis concedes that Moore visited him more than once during an eight month period beginning in January 2005 and that he did not report or complain that Moore was a danger or threat to him. Lewis allegedly told Major Polce, in early September 2005, that he wanted Moore removed from his visitation list because she was a convicted felon. On September 17, 2005, Moore was removed from Lewis's visiting list by Captain Patz. There is no evidence that either Major Polce or Captain Patz were involved in the incident regarding Moore's visit on December 5, 2007, or that they were aware that Moore posed a danger to Lewis at that time.

It is evident from the Incident Report completed by Officer Morales that he admitted Moore to MacDougall to visit with Lewis because she said that she was Attorney Murphy's assistant. The fact that Officer Morales may not have checked Moore's identification or credentials prior to admitting her to the visitation room with Lewis constitutes negligent conduct, at best. See Hayes, 84 F.3d at 620 ("[T]he prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."). Thus, Lewis has failed to present evidence suggesting that any defendant was aware that he would be assaulted by Moore and deliberately disregarded that risk by permitting Moore to enter MacDougall and visit him. Furthermore, defendants have presented evidence demonstrating that, after becoming aware that Moore's admission to MacDougall was unauthorized, they immediately took action to remedy the situation by first questioning Moore and then asking her to leave. Because Lewis has not met his burden of demonstrating the existence of a genuine issue of material fact as to the subjective element of the Eighth

Amendment failure to protect claim, the Motion for Summary Judgment is granted as to this claim.

      B.      <u>Fourteenth Amendment Due Process Claim</u>

Lewis alleges that, immediately following the visit with Moore and Attorney Murphy, Lieutenant Velez placed him on administrative detention status pending an investigation and other officers escorted him to the restrictive housing unit. Lewis claims that he spent two weeks in the restrictive housing unit and that, during that time, no prison official interviewed him or took his statement. Defendants argue that Lewis has failed to state a claim of denial of procedural due process in connection with his confinement in the restrictive housing unit.

To state a claim for violation of procedural due process, the plaintiff first must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. <u>See</u> <u>Tellier v. Fields</u>, 280 F.3d 69, 79-80 (2d Cir. 2000). In <u>Sandin v. Connor</u>, 515 U.S. 472 (1995), the Supreme Court established the appropriate standard for determining the existence of a protected liberty interest in due process claims involving an inmate's placement in administrative segregation. The Court held that a protected liberty interest generally will arise only where, as punishment for alleged misconduct, a prisoner is involuntarily placed in confinement which is "'qualitatively different' from the punishment characteristically suffered by a person convicted of a crime and results in 'stigmatizing consequences.'" <u>Id.</u> at 479 n.4 (quoting <u>Vitek v. Jones</u>, 445 U.S. 480, 493-94 (1980)). Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or

11

restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. Sandin, 515 U.S. at 484; see Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

Inmates should reasonably anticipate confinement in segregation. See Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993); Cespedes v. Coughlin, 956 F. Supp. 454, 470-71 (S.D.N.Y. 1997) (collecting cases). The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship. However, "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." Williams v. Keane, No. 95 CIV. 0379, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (collecting cases); see also Nicholson v. Murphy, No. 302CV1815, 2003 WL 22909876, at *10-11 (D. Conn. Sept. 19, 2003) (holding that confinement in segregation under thirty days is not an atypical and significant hardship).

Although plaintiff alleged in his complaint that he was placed on administrative detention and housed in the restrictive housing unit for two weeks following the incident with Moore on December 7, 2005, defendants have submitted an Inmate Grievance filed by Lewis on December 19, 2005, in which he states that he was released from the restrictive housing unit and placed in P-pod on December 13, 2005, just six days after the incident with Moore. Furthermore, in a letter to Major Polce dated December 16, 2005, Lewis indicated that he had already been moved to P-pod. Thus, it is apparent

12

that Lewis was held in the restrictive housing unit for no more than ten days. The plaintiff has provided no evidence suggesting that his confinement in the restrictive housing unit during this ten day time period was qualitatively different from ordinary prison life. The Grievance and letter filed by Lewis indicate that he was not permitted to work at the job he held before his placement in the restrictive housing unit. An inmate, however, has no constitutional right to a job in prison. See Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (holding that there is no constitutional right to a job without underlying state law mandating jobs for prisoners); Banks v. Norton, 346 F. Supp. 917, 921 (D. Conn. 1972) (noting that an inmate has no liberty interest in prison job). Thus, the court concludes that the plaintiff's ten day confinement in the restrictive housing unit on administrative detention status was not an "atypical or significant" hardship and did not give rise to a liberty interest under Sandin. The defendants' Motion for Summary Judgment is therefore granted as to Lewis's Fourteenth Amendment due process claim.

    C.    Retaliation Claim

Defendants contend that the Complaint includes only general allegations that Lieutenant Velez retaliated against Lewis. They argue that Lewis has failed to produce evidence sufficient to support a claim of retaliation because he has not demonstrated that he was engaged in constitutionally protected activity when Lieutenant Velez allegedly retaliated against him. Alternatively they allege that the retaliation was de minimis and did not give rise to a cognizable claim.

Prison officials may not retaliate against inmates for exercising their constitutional rights. To establish a retaliation claim, a plaintiff must be able to show that his activity was protected by the Constitution or federal law, that the defendants

13

took adverse action against him, and that there was a causal connection between this adverse action and plaintiff's protected activity. See Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004). Because claims of retaliation are easily fabricated, courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).

Lewis states in his Affidavit that, immediately following his visit with Moore and Attorney Murphy on December 7, 2005, Lieutenant Velez placed him on administrative detention and confined him in the restrictive housing unit. Aff. of Eddie Preston Lewis at ¶ 33 ("Lewis Aff.") (Doc. No. 31). Lewis states that, later that evening, Lieutenant Velez verbally threatened him and told him that it would be in his best interest not to mention the breach of security incident involving the visit with Moore. Id. at ¶ 38. Lieutenant Velez also informed Lewis that he would not see his personal property again. Id. at ¶ 39. Lewis states that Lieutenant Velez threatened him on several other occasions during the time he was confined in the restrictive housing unit. Id. at ¶ 38.

On December 16. 2005, Lewis sent a letter to Major Polce complaining of his treatment, despite these threats by Velez. This use by Lewis of the prison grievance system is constitutionally protected activity. See Gill, 389 F.3d at 384. Therefore any adverse action taken in retaliation for this complaint is actionable.

On December 16 (the same day he wrote his letter), Lewis spoke with an Officer Coro, who said, "you didn't hear it from me but Lt. Velez threw your stuff away," including $3,000 worth of legal texts. Lewis Aff. at ¶ 41-42. Lewis spoke with Velez on December 20, and Velez confirmed that he had disposed of Lewis's property. Id. at ¶

14

42.

The court finds that the disposal of $3,000 worth of personal property is sufficiently adverse, such that it "would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process or the courts." Gill, 389 F.3d at 384. While it is not entirely clear whether Velez discarded Lewis's property before or after Lewis engaged in protected activity, the court finds plaintiff has come forward with sufficient evidence to create a material issue of fact as to the causal connection between his use of the grievance process and the retaliatory destruction of his property. The court, therefore, denies summary judgment with respect to this claim as to Velez.

## VI. REMAINING FEDERAL CLAIMS

Plaintiff's Complaint includes several other claims sounding in federal law against certain defendants. Defendants do not address these claims in their Motion for Summary Judgment. However, the court finds that none of the following allegations state a claim upon which relief may be granted. Therefore, the court dismisses each pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court presiding over an in forma pauperis proceeding to dismiss at any time a claim upon which relief may not be granted).

### A. Eighth Amendment Medical Claim

Lewis includes John/Jane Doe nurse as a defendant and claims that he or she refused to provide him with medical care after the alleged assault by Moore. Deliberate indifference by prison officials to a prisoner's serious medical or mental health need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See

Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, Lewis must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to his serious medical need. Id. at 106. Mere negligence will not support a section 1983 claim. "[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law . . . ." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation." Id.

Objectively, Lewis must show that he suffered from a serious medical condition. A serious medical need has been defined by the Second Circuit as an urgent medical condition that causes death, degeneration, or extreme pain. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The Second Circuit also considers whether the medical condition affects an inmate's daily activities in a significant manner and whether a reasonable physician would consider the condition or injury to be important and to require treatment. See Chance v Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Subjectively, Lewis must show that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Lewis must demonstrate "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. Thus, Lewis must show that the prison official was aware of facts from which he or she should have recognized the risk of substantial harm to the injured inmate. See Hathaway, 37 F.3d at 66.

Lewis alleges that he suffered a bruised eye as a result of the alleged assault by Moore. He does not allege or provide evidence that this injury was urgent, caused him

16

extreme pain, affected his daily activities, or was such that a physician considered it to be important or to have required treatment.  Lewis has failed to submit any medical records indicating that he sought or received treatment for this injury at any time after a medical nurse examined him on the day he incurred the injury.  Accordingly, the court concludes that Lewis has failed to allege that he suffered from a serious medical need at the time the John/Jane Doe medical nurse refused to provide him with treatment.  The Eighth Amendment claim against John/Jane Doe medical nurse is dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

      B.     <u>Failure to Remove Moore from Visiting List</u>

Lewis alleges that Visiting Clerk Babcock and Major Polce failed to comply with his requests to remove Moore from his visiting list in late August and early September 2005.  Lewis concedes that Captain Patz removed Moore from his visiting list on September 17, 2005.  Lewis has not alleged that he has a constitutionally or federally protected right to have an individual removed from his visiting list in a timely manner.  In addition, the removal or deletion of an individual from an inmate's visiting list is discretionary rather than mandatory.  <u>See</u> State of Conn. Dep't of Corr. Admin. Dir. No. 10.6(4)(A)(2) ("Deletions from an inmate visiting list <u>may</u> be made at the written request of the inmate." (emphasis added)).  Accordingly, the claims against defendants Babcock and Polce regarding the initial removal of Moore from Lewis's visiting list are dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

17

### C. Failure to Investigate

Lewis asserts that Captain Beaudry improperly investigated the incident involving Moore's unauthorized visit because he assigned Correctional Officer Stolfi to perform the investigation, that Captain Patz also failed to properly investigate the incident, and that Officer Stolfi and Major Polce provided false information in the incident report that was generated pursuant to the investigation. Lewis also alleges that he wrote to Deputy Warden Boyle about the incident involving Moore's visit, but Boyle failed to respond to him.

"There is . . . no constitutional right to an investigation by government officials." Lewis v. Gallivan, 315 F. Supp. 2d 313, 316-17 (W.D.N.Y. 2004) (internal quotation marks and citations omitted). Lewis concedes that, after the investigation of the incident was completed, he was cleared of any wrongdoing in connection with the visit from Moore and did not receive a disciplinary report. Thus, plaintiff does not assert that the alleged lack of response by Deputy Warden Boyle to his letter regarding the unauthorized visit of Moore, the alleged failure of defendants Beaudry and Patz to properly investigate the incident involving Moore, or the inclusion of allegedly false information in the incident report by defendants Polce and Stolfi deprived him a federally or constitutionally protected right. Accordingly, the claims against Deputy Warden Boyle and defendants Beaudry, Polce, Patz, and Stolfi are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### VII. CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. No. 22) and Motion to Request Additional Discovery (Doc. No. 28) are denied. Defendants' Motion for Summary

Judgment (Doc. No. 27) is denied with respect to Lewis's retaliation claim against Lieutenant Velez and any related state law claims. Defendants' Motion for Summary Judgment is granted in all other respects. All remaining federal claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The court declines to exercise supplemental jurisdiction over any state law claims against the defendants other than Velez pursuant to 28 U.S.C. § 1367(c)(3).

The case will proceed against Lieutenant Velez under Lewis's retaliation claim regarding the disposal of $3,000 worth of Lewis's legal books and any related state law claims based on that theory.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 22nd day of September, 2010

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge